UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Andrew M.W.,[1]

        Plaintiff,               Court File No.  22-cv-2025 (JRT/LIB)

v.                 **REPORT & RECOMMENDATION**

Kilolo Kijakazi,
Acting Commissioner of Social Security,

        Defendant.

      Plaintiff, Andrew M.W. (hereinafter "Plaintiff"), seeks judicial review of the decision of the Acting Commissioner of Social Security ("Defendant") denying his application for disability benefits. This matter has been referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. This Court has jurisdiction over the claims pursuant to 42 U.S.C. § 405(g).

      Plaintiff filed a brief in support of his argument pursuant to the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), and Defendant submitted a motion for summary judgment. [Docket Nos. 18, 20]. The Court took the matter under advisement on the parties' written submissions.

      For the reasons discussed herein, the undersigned recommends that Plaintiff's request for relief, [Docket No. 18], be **GRANTED**, and that Defendant's Motion for Summary Judgment, [Docket No. 20], be **DENIED**.

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in Social Security opinions such as the present Report and Recommendation. Accordingly, where the Court refers to Plaintiff by his name, only his first name and last initial are provided.

## I. Procedural History

On June 21, 2019, Plaintiff filed a Title II application for a period of disability and disability benefits, as well as, an application for supplemental security income. (Tr. 19, 171).[2] On May 22, 2020, Plaintiff filed an application for child's insurance benefits based on disability. (Tr. 19, 318-325). Plaintiff alleged that his disability began on December 1, 2019, and that his disability was caused by impairments of "cognitive delayed," "social and emotional dysfunction," "ADHD," and "IQ of 62 mild retardation." (Tr. 19, 171). The Acting Commissioner initially denied Plaintiff's present claims on October 13, 2020, and again, upon reconsideration, on February 4, 2021. (Tr. 88-125, 146-191). On February 10, 2021, Plaintiff filed a written request for a hearing before an Administrative Law Judge. (Tr. 224-225).

Administrative Law Judge Micah Pharris (hereinafter "ALJ") conducted a hearing on September 29, 2021. (Tr. 19). Plaintiff and his mother, Lori Wade, testified at the hearing, along with independent vocational expert, Mitchell Norman. (Tr. 19). On November 16, 2021, the ALJ issued a decision denying Plaintiff's request for child insurance benefits, disability benefits, and supplemental security income. (Tr. 19-34). The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 34).

Thereafter, Plaintiff sought review of the decision by the Appeals Council. (Tr. 1-7). Subsequently, on June 14, 2022, the Appeals Council denied Plaintiff's request for review. (Tr. 1). Accordingly, the ALJ's decision became the final decision of the Acting Commissioner. See 20 C.F.R. §§ 404.981, 416.1481.

---

[2] Throughout this Order, the Court refers to the Administrative Record, [Docket No. 12], by the abbreviation "Tr." The Administrative Record is consecutively paginated across 93 exhibits. (See Administrative Record [Docket No. 12). Where the Court cites to the Administrative Record, it refers to the page numbers found in the bottom-right corner of these exhibits.

On August 17, 2022, Plaintiff filed the present action. (Complaint, [Docket No. 1]). Thereafter, Plaintiff filed a brief in support of his argument pursuant to the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), and Defendant submitted a motion for summary judgment. [Docket Nos. 18, 20]. The Court took the matter under advisement on the written submissions.

## II. Standards of Review

### A. Administrative Law Judge's Five-Step Analysis

If a claimant's initial application for disability benefits is denied, he may request reconsideration of the decision. 20 C.F.R. §§ 404.907-404.909. A claimant who is dissatisfied with the reconsidered decision may then obtain administrative review by an administrative law judge ("ALJ"). 42 U.S.C. § 405(b)(1); 20 C.F.R. § 404.929.

To determine the existence and extent of a claimant's disability, the ALJ must follow a five-step sequential analysis. This analysis requires the ALJ to make a series of factual findings regarding the claimant's impairments, residual functional capacity, age, education, and work experience. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992). The Eighth Circuit has described this five-step process as follows:

> The Commissioner of Social Security must evaluate: (1) whether the claimant is presently engaged in a substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

Dixon v. Barnhart, 353 F.3d 602, 605 (8th Cir. 2003).

### B. Appeals Council Review

If the claimant is dissatisfied with the ALJ's decision, he may request review by the Appeals Council; however, the Appeals Council need not grant that request for review. See 20 C.F.R. §§ 404.967-404.982. The decision of the Appeals Council (or, if the request for review is denied by the Appeals Council, then the decision of the ALJ) is final and binding upon the claimant, unless the matter is appealed to federal court within sixty days after notice of the Appeals Council's action. See 42 U.S.C. § 405(g); 20 C.F.R. § 404.981. In this case, the Appeals Council declined to review the ALJ's decision finding that Plaintiff was not disabled. (Tr. 1-7).

### C. Judicial Review

Judicial review of the administrative decision generally proceeds by considering the decision of the ALJ at each of the five steps. However, judicial review of the Commissioner's decision to deny disability benefits is constrained to a determination of whether the decision is supported by substantial evidence in the record, as a whole. 42 U.S.C. § 405(g); Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008); Tellez v. Barnhart, 403 F.3d 953, 956 (8th Cir. 2005); Buckner v. Apfel, 213 F.3d 1006, 1012 (8th Cir. 2000) ("We may reverse and remand findings of the Commissioner only when such findings are not supported by substantial evidence on the record as a whole."). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007); Buckner, 213 F.3d at 1012 (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)).

In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the ALJ. Hilkemeyer v. Barnhart, 380 F.3d 441, 445 (8th Cir. 2004). The possibility that the Court could draw two inconsistent conclusions from the same

4

record does not prevent a particular finding from being supported by substantial evidence. Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994). The Court should not reverse the Commissioner's finding merely because evidence may exist in the administrative record to support the opposite conclusion. Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

After balancing the evidence, if it is possible to reach two inconsistent positions from the evidence and one of those positions represents the Commissioner's decision, the court must affirm the decision. Robinson, 956 F.2d at 838. Thus, the court will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice.'" Bradley, 528 F.3d at 1115. The decision of the ALJ "is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." Id. "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009) (quotation omitted).

The claimant bears the burden under the Social Security Act of proving that she is disabled. See 20 C.F.R. § 404.1512(a); Whitman v. Colvin, 762 F.3d 701, 705 (8th Cir. 2014). Once the claimant has demonstrated she cannot perform prior work due to a disability, the burden then shifts to the Commissioner to show that the claimant retains the residual functional capacity ("RFC") to engage in some other substantial, gainful activity. Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005).

### III. Decision Under Review

Before beginning the five-step disability evaluation process, the ALJ first determined that Plaintiff met the insured status requirement of the Social Security Act through June 30, 2022. (Tr. 22). This finding is not in dispute.

5

Thereafter, the ALJ made the following determinations during the five-step disability evaluation process.

At step one, the ALJ determined that Plaintiff had not attained age 22 as of December 1, 2019, the alleged disability onset date. (Tr. 22). This finding is not in dispute. The ALJ also concluded that, after the alleged onset date, while Plaintiff had engaged in substantial gainful activity ("SGA") during quarter one of 2020 and quarter two of 2021, there had been a continuous 12-month period during with which Plaintiff did not engage in SGA. (Tr. 22). In doing so, the ALJ noted that Plaintiff did work in the second, third, and fourth quarters of 2020 and the first quarter of 2021 but that work activity did not rise to the level of SGA. (Tr. 22). The Court will refer to the period between the dates Plaintiff did not engage in SGA and the date Plaintiff attained age 22 as "the adjudicated period."

At step two, the ALJ concluded that Plaintiff had the following severe impairments: polysubstance abuse, borderline intellectual functioning, major depressive disorder, anxiety, and attention deficit hyperactivity disorder (ADHD). (Tr. 22). These findings are not in dispute.

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 24-27). Specifically, the ALJ found that Plaintiff did not have any impairment or combination of impairments which met or medically equaled listings 12.02, 12.04, 12.06, and 12.11. (Tr. 24). Plaintiff does not challenge the ALJ's findings at step three.

At step four, the ALJ made the following RFC determination:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non exertional limitations: the claimant is limited to simple routine repetitive tasks and may have occasional

6

>  superficial contact with others where superficial is defined as rated no lower than an 8 on the Selected Characteristics of Occupations' people rating.

(Tr. 27). Plaintiff challenges this RFC determination made by the ALJ.

In making this RFC determination, the ALJ, considering the record, as a whole, found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms;" however, the ALJ also found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the ALJ's] decision." (Tr. 27-28). Plaintiff challenges this credibility finding by the ALJ.

Finally, based on that RFC determination, the ALJ found at step five that, at all times relevant to the ALJ's decision, Plaintiff was able to perform past relevant work as a package handler. (Tr. 32). Alternatively, the ALJ concluded that "[c]onsidering the [Plaintiff's] age, education, work experience, and residual functional capacity, the [Plaintiff] was capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 33). Relying upon testimony from IVE Norman, the ALJ specifically found that, among the representative occupations, Plaintiff would be able to perform the requirements of cleaner II (Dictionary of Occupational Titles No. 919.687-014) of which there were about 111,000 positions in the national economy; industrial sweeper (Dictionary of Occupational Titles No. 389.683-010) of which there were about 168,000 positions in the national economy; and dryer attendant (Dictionary of Occupational Titles No. 581.686-018) of which there were about 16,700 positions in the national economy. (Tr. 33). Other than an implicit challenge based on Plaintiff's challenge to step four, Plaintiff does not directly challenge the ALJ's findings at step five.

Accordingly, the ALJ found that Plaintiff was not under a disability, as that term is defined by the Social Security Act, at any time during the adjudicated period. (Tr. 34).

7

**IV. Analysis**

Plaintiff raises one issue on his appeal of the ALJ's decision: whether the ALJ erred by: 1) failing to include in the RFC a limitation regarding "slower pace and persistence" based on Dr. Dustin Warner's "persuasive" October 6, 2020, opinion; and 2) failing to explain why he did not include these limitations in the RFC.[3] (Plf.'s Brief, [Docket No. 18], at pp. 7-12). The Acting Commissioner, on the other hand, contends that she is entitled to summary judgment, arguing that Plaintiff's arguments are unavailing, and that ALJ Pharris' opinion is supported by substantial evidence in the record. (Def.'s Mem., [Docket No. 21]). However, for the reasons discussed below, the Court finds that remand is appropriate.

It is well established that the Commissioner, through the ALJ, must adequately explain his decisions and factual findings in order to permit the Court to determine whether substantial evidence supports the decision. See Scott ex rel. Scott v. Astrue, 592 F.3d 818, 822 (8th Cir. 2008) (citing Chunn v. Barnhart, 397 F.3d 667, 672 (8th Cir. 2005)); Pettit v. Apfel, 218 F.3d 901, 903–04 (8th Cir. 2000). The Eighth Circuit has held that a "failure to adequately explain . . . factual findings is 'not a sufficient reason for setting aside an administrative finding' where the record supports the overall determination." Scott, 592 F.3d at 822 (citing Senne v. Apfel, 198 F.3d 1065, 1067 (8th Cir. 1999)). Remand is appropriate, however, where the Commissioner's factual findings, considered in the context of the record as a whole, are insufficient to permit the Court to conclude that substantial evidence supports the Commissioner's decision. See Scott, 592 F.3d at 822. In those cases where the Commissioner's factual findings and overall conclusions are

---

[3] The relevant regulations governing the weighing of opinion evidence were revised for claims filed on or after March 27, 2017. See 20 C.F.R. § 404.1520c(a). Because Plaintiff filed his application for disability benefits on June 21, 2019, the new regulations apply here. See Id.

8

insufficient for meaningful appellate review, remand is appropriate. See Pettit v. Apfel, 218 F.3d 901, 903–04 (8th Cir. 2000).

On October 6, 2020, Plaintiff appeared for a consultative examination with Dr. Dustin Warner and reported "ADHD and cognitive delay." (Tr. 711). He told Dr. Warner that he was not presently taking any medication, and while he had taken prescription medication for ADHD treatment in the past, he could not recall the name. (Id.). Plaintiff also denied major medical problems, traumatic brain injuries, loss of consciousness, or general medical hospitalizations. (Id.). Plaintiff told Dr. Warner that he had two weeklong psychiatric admissions in 2017, which were prompted by suicidal thoughts, but that he did not attempt suicide. (Id.). He also told Dr. Warner that he is not currently meeting with mental health care professionals, although he has in the past. (Id.). Plaintiff reported going through an inpatient drug treatment program in 2019 for three months; he admitted to marijuana use with the most recent usage the night before at 11:00 p.m.; and he admitted to drinking alcohol three times a week. (Tr. 712). Plaintiff told Dr. Warner that he graduated high school with an IEP but that he "barely passed." (Id. at 711). He also reported currently working as a cashier at a liquor store for the past three months with the longest held position lasting for six months at a beverage company in their warehouse. (Id. at 711-712).

Plaintiff described his daily activities. He lived with his mother and a roommate. (Id. at 712). He went to bed a 2:00 a.m. and woke up at noon. (Id.). Plaintiff reported showering every other day and eating twice a day. (Tr. 712). He reported working from 2:45 p.m. to 10:00 p.m. and playing on his game console when he was not working. (Id.). Plaintiff also told Dr. Warner that he had a driver's license and drove himself to and from work; he vacuumed, did his own laundry, made his bed, and brushed his teeth. (Id.). Plaintiff reported having friends with whom he got along with. (Id.).

On mental status examination, Dr. Warner reported that Plaintiff was alert, oriented and cooperative, gave adequate eye contact, speech was goal-directed, thought processes and content were unremarkable, and stream of consciousness was clear and reality based. (Id. at 712-713). Plaintiff was reportedly not overtly anxious and presented with flat affect. (Tr. 713). Plaintiff reported sleeping later at night with below average energy levels due to his work shift; and having an appetite of two meals per day. (Id.). Plaintiff denied having plans or intentions of harming himself or others. (Id.). Plaintiff could recall six digits forward and three digits backward. (Id.). He recalled two of three objects after five-and thirty-minute delays. (Id.). He could count backwards from twenty to one at a normal pace and could count serial 3s incurring one mistake. (Tr. 713). Plaintiff provided simple interpretations of abstract proverbs. (Id.). His insight and judgment were fair, and recent and remote memories appeared intact. (Id.). Dr. Warner estimated Plaintiff's level of intelligence was borderline range. (Id.).

Dr. Warner reviewed a 2014 evaluation report included in Plaintiff's school records, which indicated Plaintiff had "ADHD, combined type, PDD-NOS, and mild mental retardation." (Id. at 712). However, Dr. Warner diagnosed Plaintiff with borderline intellectual functioning, alcohol use disorder, and cannabis use disorder; and found that Plaintiff was incapable of managing his own funds. (Tr. 714). He opined that Plaintiff had the mental capacity to understand, remember, and follow simple instructions. (Id.). Dr. Warner further opined that Plaintiff's "attention and concentration skills would allow him to handle routine, repetitive work at a slower pace and persistence." (Id.). He also found that Plaintiff could "respond appropriately to brief and superficial contact with co-workers and supervisors" and "tolerate minimal stress and pressure found in entry-level workplaces." (Id.).

The ALJ reviewed Dr. Warner's consultative examination and found it "persuasive" because, as a licensed psychologist who had an opportunity to examine Plaintiff, his opinion "was supported by explanation and [was] generally consistent with the record as a whole." (Tr. 31). In formulating the RFC, as noted above, the ALJ determined that Plaintiff could perform a full range of work at all exertional levels but limited Plaintiff to simple, routine repetitive tasks, and limited him to occasional superficial contact with others. However, as Plaintiff points out, the RFC's limitation to simple, routine repetitive tasks did not include Dr. Warner's recommended limitation of slower pace and persistence nor did the RFC include any other limitation that might attempt to incorporate a limitation in Plaintiff's ability to handle fast-paced or production rate-pace work. Further, the ALJ did not give an explanation why a limitation to slower pace and resistance was not included in the RFC.

In finding Dr. Warner's October 6, 2020, opinion "persuasive," Plaintiff contends that the ALJ should have accounted for this limitation in the RFC, and because it was not included, the ALJ was required to explain this inconsistency. However, the Commissioner argues that the ALJ was not required to adopt Dr. Warner's opinion in its entirety where substantial evidence supported the ALJ's findings. (Def.'s Mem., [Docket No. 21], at pp. 5-6). The Commissioner further argues that, under the new regulations, the ALJ was not required to explain why Dr. Warner's limitations on pace and persistence were not included in the RFC. (Id.). The Court finds the Commissioner's arguments unpersuasive.

The Commissioner is correct that, in formulating the RFC, the ALJ was not required to list and reject every possible limitation, particularly those limitations that were not supported by the record as a whole. McCoy, 648 F.3d at 615. Nor was the ALJ required to cite to every piece of evidence that supported his decision regarding any limitations he found. Wildman, 596 F.3d at

11

966. But Plaintiff's challenge is not that the ALJ failed to endorse every limitation in Dr. Warner's October 6, 2020, opinion, but that after finding the opinion "persuasive," without qualification or exclusion, specifically on the subject of Plaintiff's limitation to slower pace and persistence, the ALJ did not include those limitations in the RFC nor in his hypothetical to the vocational expert, and he did not explain why he chose not to. An ALJ cannot assign weight to a medical opinion without addressing material conflicts between that opinion and the ALJ's RFC. See SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) (providing that an ALJ must explain the resolution of any material evidentiary inconsistencies or ambiguities in assessing an RFC).

Here, without a specific discussion or explanation by the ALJ, the Court is unable to meaningfully review this portion of the decision where the ALJ appears to have implicitly discounted Dr. Warner's October 9, 2020, opinion as to Plaintiff's limitation to slower pace and persistence. See Draper v. Barnhart, 425 F.3d 1127, 1130 (8th Cir. 2005) (quoting Reeder v. Apfel, 214 F.3d 984, 988 (8th Cir. 2000) ("While a 'deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency [has] no practical effect on the outcome of the case,' inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis to remand.").

On remand, the ALJ should review the record to 1) reconsider whether additional limitations on pace and persistence in handling routine, repetitive work consistent with Dr. Warner's October 6, 2020, opinion should be included in the RFC and, if not, to the explain its omission; 2) if necessary, to put a new hypothetical question to the vocational expert; and 3) based on the resulting testimony, to reconsider the finding at step five that Plaintiff was disabled.

## V. Conclusion

Therefore, based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Plaintiff's request for relief, [Docket No. 18], be **GRANTED**;

2. Defendant's Motion for Summary Judgment, [Docket No. 20], be **DENIED**; and

3. The above matter be **REMANDED** to the Social Security Administration pursuant to sentence four of 42 U.S.C. § 405(g), for further administrative proceedings consistent with the opinion above.

Dated: June 6, 2023

s/Leo I. Brisbois<br>
Hon. Leo I. Brisbois<br>
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).